**UNITED STATES of America,**
**Plaintiff,**

v.

**Rodney D. KING, and [01] Sharon–Mae Nishimura [02], Defendants.**

**No. Cr. No. 09–00207 DAE.**

United States District Court,
D. Hawai'i.

May 13, 2010.

Darren W.K. Ching, Office of the United States Attorney, Honolulu, HI, Kayla Bakshi, Edward G. Caspar, US Department of Justice, Washington, DC, for Plaintiff.

Matthew C. Winter, Office of the Federal Public Defender, Honolulu, HI, Randall M. Oyama, Honolulu, HI, for Defendants.

## ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS COUNTS OF THE SECOND SUPERSEDING INDICTMENT

DAVID ALAN EZRA, District Judge.

On May 3, 2010, Defendant Rodney King's motions to dismiss multiple counts of the indictment (Docs. ## 139, 140, 141) came before the Court for hearing. Edward G. Caspar, Trial Attorney, U.S. Department of Justice, and Darren W.K. Ching, Assistant U.S. Attorney, appeared at the hearing on behalf of the Government; Matthew C. Winter and Salina Althof, Assistant Federal Defenders, appeared at the hearing on behalf of Defendant King ("Defendant"). After reviewing the motions and the supporting and opposing memoranda, the Court DENIES Defendant's motions.

## BACKGROUND

Many of the facts of this case have been described in a previous order by this Court. (*See* Doc. # 114.) Accordingly, only facts relevant to the assessment of the instant motions are recounted.

On May 20, 2009, a federal grand jury returned a six-count indictment against Defendant and co-defendant Sharon–Mae Nishimura ("Nishimura"). (Doc. # 1.) On September 23, 2009, the Government filed a superseding indictment charging Defendant with 13 counts. (Doc. # 35.) On September 30, 2009, Defendant entered a plea of not guilty. (Doc. # 44.)

On January 14, 2010, the Government filed a second superseding indictment ("Indictment") charging Defendant with Counts 1–4 and 7–12, in violation of 18 U.S.C. § 1591, Counts 5–6, in violation of 18 U.S.C. §§ 1594, 1591; and Count 13, in violation of 18 U.S.C. § 371. (Doc. # 64.) On January 15, 2010, Defendant entered a plea of not guilty. (Doc. # 70.)

On April 5, 2010, Defendant filed the instant motions to dismiss multiple counts against him from the Indictment. (Docs. ## 139–141.) Defendant's first motion ("First Motion") moves to dismiss Counts 7, 8, 11, and 12 for failure to state offenses. ("First Mot.," Doc. # 139.) Defendant's second motion ("Second Motion") moves to dismiss Counts 1, 3, 5, 7, 9, and 11 or counts 2, 4, 6, 8, and 12, or otherwise

redress the multiplicity of these counts. ("Second Mot.," Doc. # 140.) Defendant's third motion ("Third Motion") moves to dismiss Counts 9 and 10 or counts 11 and 12, or otherwise redress the multiplicity of these counts. ("Third Mot.," Doc. # 141.) On April 19, 2010, the Government filed its response in opposition to Defendant's motions. ("Opp'n to ____ Mot.," Docs ## 155–157.) On April 20, 2010, Defendant filed his replies. ("Reply to ____ Mot.," Docs. ## 160–161.)

## DISCUSSION

I. *First Motion: Motion to Dismiss Counts 7, 8, 11, and 12 for Failure to State Offenses*

▪ Defendant moves to dismiss Counts 7, 8, 11, and 12 of the Indictment because, allegedly, each count fails to allege an element that is necessary to impose the punishment set forth in 18 U.S.C. § 1591(b)(2). (First Mot. at 3–8.) Specifically, Defendant argues that section 1591 requires as an element that the victims had *in fact* attained the age of 14 but had not yet attained the age of 18 instead of the Indictment's charge that Defendant acted *knowing* that his victims had attained the age of 14 but had not yet attained the age of 18.(*Id.*) Defendant alleges that the grand jury, therefore, failed to find all of the elements necessary to sufficiently allege an offense against the United States as to each of these counts, and accordingly, the counts must be dismissed

because each fails to state an offense. (*Id.*) The Government argues that Defendant makes the implausible claim that the charges that he acted "knowing that" his victims had attained the age of 14 but had not yet attained the age of 18 do not suffice to allege that his victims had in fact attained the age of 14 but had not yet attained the age of 18. (Opp'n to First Mot. at 3.)

Counts 7, 8, 11, and 12 charge Defendant with the sex trafficking of two girls under the age of 18. (*See* Indictment.) Title 18, section 1591 prohibits sex trafficking of minors and of adults if the trafficking is effected by force, fraud, or coercion. *See* 18 U.S.C. § 1591. Counts 7, 8, 11, and 12 of the Indictment each allege a violation of subsections 1591(a) and 1591(b)(2).[1] (Indictment at 7, 8, 11, & 12.) Subsections 1591(a) and 1591(b) provide as follows:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, or obtains by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing that force, fraud or coercion described in subsection (c)(2)[2] will be used to cause the person to engage in a commercial sex act, or that the person

---

**1.** All citations to section 1591 are to the version of section 1591 in effect from July 27, 2006 to December 22, 2008—the time frame in which the crimes against Defendant are alleged to have occurred. Section 1591 was amended on December 23, 2008, after the time frames alleged in the indictment. For clarity, the Court speaks of the prior version of the statute in the present tense.

**2.** Subsection 1591(c)(2) defines the term "coercion" as:

(A) threats of serious harm to or physical restraint against any person;

(B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person;

(C) or the abuse or threatened abuse of law or the legal process.

18 U.S.C. § 1591(c)(2).

has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

(b) The punishment for an offense under subsection (a) is—

(1) if the offense was effected by force, fraud, or coercion or if the person recruited, enticed, harbored, transported, provided, or obtained had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or

(2) if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, or obtained had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

18 U.S.C. § 1591.

Counts 7 and 11 allege violations of subsections 1591(a)(1) and (b)(2). Counts 8 and 12 allege violations of subsections 1591(a)(2) and (b)(2). All of these Counts charge that Defendant acted "knowing that [each victim] had attained the age of fourteen (14) but had not yet attained eighteen (18) years of age." (Indictment at 6, 7, 9.) The charges do not state additionally that each victim had *in fact* attained the age of 14 but had not yet attained the age of 18.

Preliminarily, the Government argues that it need not have alleged any of the factors in subsection 1591(b) because such factors operate solely to limit the court's discretion in sentencing by increasing the mandatory minimum sentence. (Opp'n to First Mot. at 10.) In support, the Government states that the penalty provision set out in subsection 1591(b) does not alter the *maximum penalty* for the sex trafficking

crimes it prohibits in subsection 1591(a), nor does it create a separate offense. Rather, the Government argues, the provision operates solely to limit the court's discretion in sentencing by increasing the mandatory *minimum sentence*. *See* 18 U.S.C. § 1591(b). As such, the Government states that the factors identified in section 1591(b)—whether a defendant's victims had attained the age of 14 but had not yet attained the age of 18—would not need be alleged in the indictment or proved to a jury. (*See id.* (citing *Harris v. United States*, 536 U.S. 545, 568, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002)); *see also McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).)

The Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) held that " 'any fact (other than prior conviction) that increases the *maximum penalty* for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " *Apprendi*, 530 U.S. at 476, 120 S.Ct. 2348 (quoting *Jones*, 526 U.S. at 243 n. 6, 119 S.Ct. 1215) (emphasis added). Defendant argues that the subsection 1591(b) elements must be found by both the grand and petite juries because such elements provide the only authority for punishment in the statute. (*See* First Mot. at 3–4; Reply to First Mot. at 2–5.)

In support, Defendant asserts that in *United States v. Todd*, 584 F.3d 788, 793–794 (9th Cir.2009) the Ninth Circuit recognized that there is a hole in section 1591 when the victims are over 18 and the offense was not effected by force, fraud, or coercion. *Todd*, 584 F.3d at 793. The *Todd* court found that in such a circumstance, no punishment could be imposed upon a defendant because the jury failed to find the facts set forth in subsection

1591(b) on which imprisonment is justified. *Id.* at 793–794. Therefore, Defendant argues that because the facts set forth in subsection 1591(b) are necessary in order to authorize the *maximum* punishment to which a defendant is exposed, those facts are elements, not sentencing factors, and they must therefore be alleged in the indictment and proven to a jury beyond a reasonable doubt. (Reply to First Mot. at 4–5.)

This Court agrees with Defendant that as per *Todd,* the facts set forth in subsection 1591(b) are offense elements necessary to justify the maximum sentence, or any sentence, imposed by the statute. Section 1591 provides for the imposition of a sentence in three circumstances: (1) if the violation of subsection 1591(a) is effected by force, fraud, or coercion, then the defendant may be sentenced to a term of imprisonment between 15 years to life, 18 U.S.C. § 1591(b)(1); (2) if the violation of subsection 1591(a) is against a victim who is younger than 14 years of age at the time of the offense, then the defendant may be sentenced to a term of imprisonment between 15 years to life, 18 U.S.C. § 1591(b)(1); or (3) if the violation of subsection 1591(a) is against a victim who is older than 14 but younger than 18 years of age at the time of the offense, then the defendant may be sentenced to a term of imprisonment between 10 years to life, 18 U.S.C. § 1591(b)(2). Therefore, this Court addresses Defendant's Motion as one asserting a lack of elements necessary for the imposition of a sentence for the Indictment's section 1591 charges.

The Fifth Amendment requires that a defendant be convicted only on charges considered and found by a grand jury. *U.S. v. Du Bo,* 186 F.3d 1177, 1179 (9th Cir.1999) (citation omitted). An indictment lacking an essential element does not properly allege an offense against the United States and generally constitutes a fatal defect that can not be cured through jury instructions because a such a missing essential element leaves nothing for a petit jury to ratify. *See id.* at 1180 (citations and quotations omitted).

Federal Criminal Rule 7 governs the nature and contents of indictments. *See* Fed.R.Crim.P. 7(c). Rule 7 requires "a plain, concise, and definite written statement of the essential facts constituting the offense. . . ." Fed.R.Crim.P. 7(c)(1); *United States v. Awad,* 551 F.3d 930, 935 (9th Cir.2009). An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy. *Awad,* 551 F.3d at 935; *see Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). "The test for sufficiency of the indictment is 'not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.'" *Awad,* 551 F.3d at 935 (quoting *United States v. Hinton,* 222 F.3d 664, 672 (9th Cir.2000)). As the Ninth Circuit has held, "[a]n indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *United States v. Lazarenko,* 564 F.3d 1026, 1033 (9th Cir.2009).

Defendant asserts that the way that section 1591 is drafted demonstrates that Congress recognized that a victim's actual age is not subsumed by what the defendant thinks he knows about the victim's age. (Reply to First Mot. at 9.) Defendant again relies on *Todd,* to argue that "knowing" the facts in the statute's penalty provision, subsection 1591(b), is not consubstantial with those facts actually being true. (*Id.*) *Todd* considered whether charges in an indictment that the defendant had acted "knowing that force, fraud, or coercion would be used," satisfied the

required elements of subsection 1591(b)(1) that force, fraud, or coercion was actually used. The *Todd* court held that because the statute's penalty provision—subsection 1591(b)—set penalties based on whether the offense "was effected by" force, fraud, or coercion for adult victims, and because the jury had found only that the defendant had acted "knowing that force, fraud, or coercion would be used," the defendant could not be sentenced. *Todd*, 584 F.3d at 792–94. The *Todd* court explained that the language "would be" created room for a possibility that force, fraud, or coercion were never actually used against the victim. *Id.*

*Todd* is inapposite to the deficiency in the Indictment alleged by Defendant. The Ninth Circuit in *Todd*, in the context of subsection 1591(a)'s requirement that a defendant know that force, fraud, or coercion *"will be used"* to cause a victim to engage in a commercial sex act, discussed how it was possible for someone to "'know' the future." *Todd*, 584 F.3d at 792. The court stated that with respect to force, fraud, or coercion, it meant that the knower was "familiar with a pattern of conduct." *Id.*

Here, the Indictment does not employ equivocal language like that at issue in *Todd*, such as a charge that Defendant knew his victims "would have" attained the age of 14 but "would not yet have" attained the age of 18. Further, looking at the language in 18 U.S.C. § 1591, subsection 1591(a) requires Defendant's knowledge that a victim had not attained the age of 18 years if punishment is to be imposed as per subsection 1591(b) based upon the victim's age. *See* 18 U.S.C. § 1591(a), (b). In contrast with the issue in *Todd*, knowledge of that a victim "has not attained the age of 18 years" does not require such speculation into the future; instead the statute clearly describes such knowledge as knowledge of the present "that the per-son has not attained the age of 18 years[.]" In the instant case, the relevant language in the Indictment when compared with the statute does not create a possibility that the alleged victims were not within the age range "known" by Defendant. The language in the Indictment that Defendant acted "knowing that" his alleged victims had attained the age of 14 but had not yet attained the age of 18 clearly establishes that Defendant had knowledge of the alleged victims' actual ages.

Defendant additionally argues that his knowledge of a fact is not consubstantial with truth of the fact because purportedly "knowing" a fact does not make that fact actually true. (First Mot. at 7.) Specifically, Defendant asserts that the charge that Defendant violated subsections 1591(a)(1) or (a)(2) while subjectively "knowing" that the alleged victims were a certain age does not allege the objective fact that the alleged victims actually were that age because many things thought to be known "often do not turn out to be true, e.g., the Earth is not flat, and the Sun does not orbit the Earth." (Reply to First Mot. at 7.) The Court disagrees.

The counts sufficiently imply that the victims in fact had attained the age of 14 but had not yet attained the age of 18 by charging that Defendant acted "knowing" that the alleged victims had attained the age of 14 but had not yet attained the age of 18. Knowledge is defined as "[a]n awareness or understanding of a fact or circumstance." Black's Law Dictionary 876 (7th ed.1999); *see also* Robin Charlow, *Wilful Ignorance and Criminal Culpability*, 70 Tex. L.Rev. 1351, 1374–75 (1992) ("[W]e do not normally impose criminal liability when the applicable mens rea is knowledge unless the thing that must be known actually is true or exists.... Hence, ... knowledge requires both belief, or subjective certainty, and the actual

truth or existence of the thing known. In short, criminal knowledge is correct belief.") (citations omitted).

The Ninth Circuit in *United States v. Awad*, 551 F.3d 930 (9th Cir.2009) considered the sufficiency of an indictment that failed to allege that the defendant acted with a mens rea of willfulness that was required for the charged offense. *See Id.* at 935-36. The *Awad* court sustained the sufficiency of the indictment because the defendant's willfulness, or in definition "bad purpose," could be inferred from the totality of facts alleged in the indictment. *See id.* at 936-37.

Similarly, in *United States v. Alber*, 56 F.3d 1106 (9th Cir.1995), the Ninth Circuit considered the sufficiency of an indictment that failed to allege that the defendant acted with the intent to extort in an action for mailing a threatening letter with intent to extort. *See id.* at 1111-12. The *Alber* court held that the indictment sufficiently implied the required intent when the indictment included evidence of a threatening letter from the defendant stating: "If Marc Kaplan does not pay $250,000 in cash in one week, his son's arm or leg will be amputated." *Id.* at 1112. As the Ninth Circuit explained, "[c]ommon sense would tell any reader that the letter was sent with the intent to extort." *Id.* Therefore, the court held that the indictment sufficiently set forth the essential facts necessary to allege the element of intent. *Id.*

When the challenged counts are "construed according to common sense, and interpreted to include facts which are necessarily implied," *Lazarenko*, 564 F.3d at 1033, they must be read to allege that the victims had in fact attained the age of 14 but had not yet attained the age of 18 and,

therefore, the charges did not fail to recite an essential element of the charge. In the context of the Indictment, Defendant could not "know" that the victim had attained the age of 14 but had not yet attained the age of 18 unless each victim actually had attained the age of 14 but had not yet attained the age of 18. Like in *Awad* and *Alber*, from the Indictment's charges that Defendant "knew" that his victims had attained the age of 14 but had not yet attained the age of 18, "[c]ommon sense would tell any reader that" the victims had in fact attained the age of 14 but had not yet attained the age of 18. The Court additionally notes that while not sufficient in and of itself to allege that the victims had attained the age of 14 but had not yet attained the age of 18, the instant Indictment continuously uses the word "minor" in relation to the victims that had attained the age of 14 but had not yet attained the age of 18 (*see* Indictment at 6, 7, 8, 9, 11) and even alleges with respect to the conspiracy count that Defendant provided A.N.H. with false identification that falsely purported that A.N.H. was over the age of 18. (*See id.* at 14.) Therefore, the challenged counts sufficiently allege that each of the victims "had attained the age of 14 years but had not attained the age of 18 years" as required by 18 U.S.C. § 1591(b)(2).[3]

The Ninth Circuit directed in *Hinton* that the question is not whether the indictment could have been framed in a more satisfactory manner, but whether it meets minimum constitutional standards. *Hinton*, 222 F.3d at 672. Here, the addition of the word "knowing" is not fatal, as the facts presented to the Grand Jury as per the Indictment sufficiently informed Grand

---

**3.** For the same reasons, Defendant's argument that a conviction would impermissibly amend the indictment fails. The Government's presentation of evidence that Defendant's alleged victims had in fact attained the age of 14 but had not yet attained the age of 18 would not constitute "facts distinctly different from those set forth in the charging instrument." *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir.1984).

Jury of the charges against Defendant, and the Indictment provided Defendant with full knowledge of the charges against him, enabled him to plead double jeopardy, and enabled him to prepare his defense. *See Awad,* 551 F.3d at 937; *United States v. Rosi,* 27 F.3d 409, 414 (9th Cir.1994) (citation omitted). Moreover, the Court is well able to determine the sufficiency of the charge. *See id.* (citation omitted).

Accordingly, the Court DENIES Defendant's Motion to Dismiss Counts 7, 8, 11, and 12 for Failure to State Offenses.

II. *Second Motion: Motion to Dismiss Counts 1, 3, 5, 7, 9, and 11 or Counts 2, 4, 6, 8, and 12, or Otherwise Redress the Multiplicity of these Counts*

■ The Indictment charges Defendant with sex trafficking crimes involving five victims. (*See* Indictment.) The Indictment charges for each alleged victim individually that Defendant violated subsection 1591(a)(1) by "recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], or obtain[ing] the victim" for commercial sex. (*Id.* at 1, 3, 5, 7, 9, 11.) Likewise, the Indictment also charges for each alleged victim that Defendant violated subsection 1591(a)(2) on the same dates by "benefit[ing] financially . . . from participation in a venture" that itself recruited, enticed, harbored, etc., the victims for commercial sex. (*Id.* at 2, 4, 6, 8, 10, 12.) Therefore, Counts 1, 3, 5, and 9 allege violations of subsections 1591(a)(1) and (b)(1), whereas Counts 2, 4, 6, and 10 each allege violations of subsections 1591(a)(2) and (b)(1). Moreover, Counts 7 and 11 allege violations of subsections 1591(a)(1) and (b)(2), whereas Counts 8 and 12 allege violations of subsections 1591(a)(2) and (b)(2).

Defendant argues that these counts are multiplicitous because the offense set forth in section 1591(a)(1), which is alleged in the odd numbered Counts, is an included offense of the offense defined in section 1591(a)(2), which is alleged in the even numbered Counts. (Second Mot. at 2–9.) Although the Government disagrees that subsection 1591(a)(1) defines an included offense of the offense defined in subsection 1591(a)(2), it nonetheless agrees that the Counts are multiplicitous because subsections 1591(a)(1) and (a)(2) set forth alternative means of committing a single offense, rather than—as Defendant maintains—elements of two separate offenses. (*See id.;* Opp'n to Second Mot. at 2.)

■ When one offense is a lesser included offense of the other, or two different criminal statutory provisions punish the same offense, the Fifth Amendment's Double Jeopardy Clause prohibits imposing punishment on a defendant for both offenses. *United States v. Overton,* 573 F.3d 679, 690 (9th Cir.2009). The Ninth Circuit employs the test from *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether one offense is a lesser included offense of another. *United States v. Davenport,* 519 F.3d 940, 943 (9th Cir.2008) (citation omitted). The *Blockburger* test is also used to determine whether two *separate* statutory provisions prohibit the same offense and should be properly regarded as one offense. *See Blockburger,* 284 U.S. at 304, 52 S.Ct. 180; *Overton,* 573 F.3d at 691. However, ultimately, the *Blockburger* test is simply a tool to apply if a court cannot discern Congressional intent: courts "look to congressional intent; did Congress intend to punish two separate evils, or merely one?" *United States v. Hairston,* 64 F.3d 491, 495 (9th Cir.1995); *see also Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *United States v. Sanchez–Vargas,* 878 F.2d 1163, 1171 n. 8 (9th Cir.1989) ("Given this indication of congressional intent with respect to multiple punishments under § 1324(a)(1), we need not address

the principles of statutory construction established in *Blockburger* . . . .").

Defendant asserts that the *Blockburger* test applies to section 1591 to determine whether subsection 1591(a)(1) is a lesser included offense of subsection 1591(a)(2). (Second Mot. at 6.) The Government also applies the test, although it notes that the test may not appropriately apply here because section 1591 involves only one statutory provision.[4] (Opp'n to Second Mot. at 3 & n. 1–2.) The *Blockburger* test has not been applied to determine whether one offense is a lesser included offense of another, or to determine whether or not Congress meant for it to establish more than one offense, when only a single statutory provision is involved. *See Overton,* 573 F.3d at 692–93; *Davenport,* 519 F.3d at 943; *United States v. Keen,* 104 F.3d 1111, 1118 n. 12 (9th Cir.1996). Courts generally utilize the *Blockburger* test to determine whether two *separate* statutory provisions prohibit the same offense or one is a lesser included offense of the other. *See Overton,* 573 F.3d at 691; *Davenport,* 519 F.3d at 943.

Here, there is only one statutory provision—section 1591. Subsections 1591(a)(1) and (a)(2) are not self contained as in *Overton,* but instead both subsections are within the overall statutory provision of 1591(a) and should be properly regarded as parts of a single statutory provision. *See* 18 U.S.C. § 2251(a), (b). Subsections 1591(a)(1) and (a)(2) each share an opening element—"whoever knowingly"—and a closing clause with both another element— knowledge of force, fraud, or coercion or a victim's under-age status—and a provision of punishment as provided by subsection 1591(b). *See* 18 U.S.C. § 1591(a). Further, subsection 1591(a)(2) relies upon the element defined in subsection 1591(a)(1).

*See* 18 U.S.C. 1591(a)(2)("benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)[ ]").

Despite the existence of one statutory provision, the Court finds that analyzing Congressional intent would produce the same result as analysis under the *Blockburger* test. Accordingly, below, the Court analyzes whether subsection 1591(a)(1) is a lesser included offense of subsection 1591(a)(2) under the *Blockburger* test and separately analyzes Congressional intent to determine whether section 1591(a) establishes one offense or two separate offenses.

Under the *Blockburger* test an offense is not a lesser included offense of another if "each [statutory] provision requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180; *Davenport,* 519 F.3d at 943. The *Blockburger* analysis focuses on the statutory elements of the offense and does not consider the particular evidence to be presented at trial. *See Overton,* 573 F.3d at 691; *United States v. Williams,* 291 F.3d 1180, 1187 (9th Cir.2002).

Defendant is incorrect in his application of the *Blockburger* test to 18 U.S.C. § 1591. Subsections 1591(a)(1) and 1591(a)(2) each require "proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180. Subsection 1591(a)(1) requires proof that *a defendant* recruited, enticed, harbored, transported, provided, or obtained a person for commercial sex, while subsection 1591(a)(2) does not require proof of such element. *See* 18 U.S.C. § 1591(a)(1), (2). Subsection 1591(a)(2) requires that a defendant bene-

---

4. The Government focuses its analysis on whether section 1591(a) establishes one offense or two separate offenses, not on whether a subsection 1591(a)(1) is a lesser included offense of subsection 1591(a)(2). (Opp'n to Second Mot. at 3 & n. 1–2.)

fit financially *from a venture* which recruited, enticed, harbored, transported, provided, or obtained a person for commercial sex, while subsection 1591(a)(1) does not require proof of such element. *See id.* § 1591(a)(2). Although a defendant's own conduct may constitute such a venture, subsection 1591(a)(2) does not require that a venture be established from a defendant's own conduct. *See Davenport,* 519 F.3d at 945. As the Ninth Circuit explained in *Overton,* "it matters not that there is 'substantial overlap' in the evidence used to prove the two offenses, so long as they involve different statutory elements." *See Overton,* 573 F.3d at 692. Accordingly, under the *Blockburger* test, because each provision requires proof of a fact that the other does not, subsection 1591(a)(1) is not a lesser included offense of subsection 1591(a)(2).

As to Congressional intent, the Court looks at whether Congress intended to authorize multiple punishments for violations of subsections 1591(a)(1) and (a)(2). *Id.* at 691. "[T]he proper inquiry involves the determination of '[w]hat Congress has made the allowable unit of prosecution.'" *Keen,* 104 F.3d at 1118 (quoting *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 97 L.Ed. 260 (1952)). The Ninth Circuit instructs courts to look at several factors to determine Congress' intent, including the language of the statute, its legislative history[5] and statutory context, the type of conduct proscribed, and the "appropriateness of multiple punishment for the conduct charged in the indictment." *United States v. Arreola,* 467 F.3d 1153, 1157 (9th Cir.2006).

Defendant submits that, with regard to subsections 1591(a)(1) and (a)(2), section 1591 is not distinguishable from the feder-

al car jacking statute, 18 U.S.C. § 2119, which the Supreme Court construed in *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), as defining separate offenses, or from the federal assault statute, 18 U.S.C. § 111, which the Ninth Circuit construed as defining separate offenses in *United States v. Chapman,* 528 F.3d 1215 (9th Cir.2008). (Reply to Second Mot. at 2 n. 1.) Defendant argues that subsections 1591(a)(1) and (a)(2) define separate elements of distinct offenses, not alternative means of a single offense.

Looking at the *Arreola* factors, a court first looks at the language of the statute itself. As described above, Subsections 1591(a)(1) and (a)(2) are listed under the same provision, although each has its own indented paragraph, the structure of subsection 1591(a) indicates that Congress did not intend them to create two separate offenses but one offense with two alternate means of violation. Specifically, subsections 1591(a)(1) and (a)(2) each share an opening element—"whoever knowingly"— and a closing clause with both another element—knowledge of force, fraud, or coercion or a victim's under-age status— and a provision of punishment as provided by subsection 1591(b). *See* 18 U.S.C. § 1591(a). Further, subsection 1591(a)(2) relies upon the element defined in subsection 1591(a)(1). *See* 18 U.S.C. 1591(a)(2)("benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)[ ]"). Congress clearly did not provide each subsection with its own completely self-contained provision as Congress did in 18 U.S.C. 2251. *See* 18 U.S.C. § 2251; *Keen,* 104 F.3d at 1120 (" 'When Congress

---

5. The legislative history of 18 U.S.C. § 1591 is not instructive. *See* H.R.Rep. No. 108–66 (2003), U.S.Code Cong. & Admin.News 2003, p. 683; H.R.Rep. No. 108–264 (2003), U.S.Code Cong. & Admin.News 2003, p. 2408.

wishes to make each act or unit a separate crime it knows how to do so, as it demonstrated in the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, which specifically define each mailing or transmission as an offense.'" (quoting *United States v. Pelusio,* 725 F.2d 161, 169 (2d Cir.1983))).

Further, the Ninth Circuit in *Arreola* found that where punishment did not depend on the statutory provisions in question, the provisions did not create two separate offenses. *Arreola,* 467 F.3d at 1157. Here, the punishment associated with a violation of section 1591(a) does not vary according to whether the defendant violated the statute by recruiting, enticing, harboring, transporting, providing, or obtaining a person for commercial sex, subsection 1591(a)(1), or by benefitting financially from a venture that committed such acts, subsection 1591(a)(2). *See* 18 U.S.C. § 1591(b) (providing the penalty provisions for section 1591).

The fact that section 1591's provision of punishment does not vary according to whether Defendant violated the statute through subsection 1591(a)(1) or (a)(2) is also contrary to Defendant's assertion that section 1591 should be construed as providing separate offenses as was 18 U.S.C. § 111 in *Chapman.* In *Chapman,* the court held that section 111 defines three separate offenses: "(1) assaults that do not involve physical contact (punishable up to one year), (2) assaults· that do involve physical contact (punishable up to eight years), and (3) assaults that involve a deadly or dangerous weapon or bodily injury (punishable by up to twenty years)." *Chapman,* 528 F.3d at 1219 (applying 18 U.S.C. § 111 (effective through Jan. 6, 2008)). The *Chapman* court cited *Jones,* the other case on which Defendant relies, in finding that where a statute sets out separate punishment clauses, each adding further elements to the crime, the punishment clauses constitute separate and dis-

tinct criminal offenses, rather than one offense with different punishments. *Id.* at 1218 (citing *Jones,* 526 U.S. at 252, 119 S.Ct. 1215).

Here, the punishment clauses— 1591(b)(1) and (b)(2)—are not argued by Defendant to create two separate offenses and section 1591 punishment associated with a violation of subsection 1591(a) does not vary according to whether the defendant violated subsection 1591(a)(1) or (a)(2). Therefore, Defendant's assertion that *Chapman* and *Jones* are parallel is incorrect and the punishment provided by section 1591 lends support for the Government's proposition that Congress created only one offense.

However, in the instant case, the next factor of "the type of conduct proscribed," *Arreola,* 467 F.3d at 1157, could be construed to lend support to finding separate offenses. *Arreola* instructs that courts should consider "whether the statute proscribes 'distinctly different kinds of conduct,' or whether the proscribed conduct is 'regarded as [falling] within the conventional understanding' of one crime." *Id.* at 1159. Here, subsection 1591(a)(1) proscribes actively engaging a person in commercial sex, and subsection 1591(a)(2) proscribes a distinctly different kind of conduct, namely, benefitting financially from a venture that itself actively engaged the person in commercial sex. *See* 18 U.S.C. § 1591(a)(1), (2).

Nonetheless, the last factor, "appropriateness of multiple punishment for the conduct in the indictment," *Arreola,* 467 F.3d at 1157, weighs clearly in favor of viewing subsections 1591(a)(1) and (a)(2) as providing for alternate means of committing one offense as opposed to creating two separate offenses. The Ninth Circuit in *Keen* stated that absent clear Congressional intent to "impose cumulative punishments upon [a defendant][ ] . . . the rule of

lenity [compels a court] to hold that imposition of consecutive sentences ... was error." *Keen*, 104 F.3d at 1119 (internal quotation marks omitted). If subsections 1591(a)(1) and (a)(2) were to be viewed as separate offenses, then a pimp found to be in violation of subsection 1591(a)(1) by engaging a victim in commercial sex in violation of the statute always would also be subject to penalties provided by subsection (a)(2) by benefitting financially from the same crime as *commercial sex* is always for the purpose of financial benefit. *See also United States v. UCO Oil Co.*, 546 F.2d 833, 837 (9th Cir.1976) (citing *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), which "laid down a presumption against construing statutes so as to lead to multiple punishment."). For all the reasons above, the Court finds that Congress did not intend the subsections 1591(a)(1) and (a)(2) to create two separate offenses such that a defendant could be penalized multiple times for the same conduct but instead intended to provide two alternate means of committing the same offense.

■ Because subsections 1591(a)(1) and (a)(2) provide for two separate means of violating the same statute, rather than for two separate offenses based on the same conduct, the Fifth Amendment's Double Jeopardy Clause prohibits imposition of punishment for both (a)(1) and (a)(2) counts. However, the Fifth Amendment's Double Jeopardy Clause protects against being punished twice for a single offense, *Davenport*, 519 F.3d at 943, "[w]here there has been no prior conviction or acquittal, the Double Jeopardy Clause does not protect against simultaneous prosecutions for the same offense, so long as no more than one punishment is eventually imposed." *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir.2006); *see also Ohio v. Johnson*, 467 U.S. 493, 500, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) ("While the Double Jeopardy Clause may protect a defendant

against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution.").

■ A court may redress multiplicity in an indictment by dismissal of multiplicitous counts or entry of an order directing the government to elect under which counts it will proceed so long as there is no improper amendment to the indictment. *United States v. Aguilar*, 756 F.2d 1418, 1423 (9th Cir.1985); *Johnson*, 130 F.3d at 1426 ("[a] decision of whether to require the prosecution to elect between multiplicitous counts before trial is within the discretion of the trial court" (citing *United States v. Throneburg*, 921 F.2d 654, 657 (6th Cir. 1990) and *United States v. Phillips*, 962 F.Supp. 200, 201 (D.D.C.1997))). A court may also choose to have all counts proceed to trial and vacate one of the multiplicitous convictions prior to sentencing. *United States v. Hector*, 577 F.3d 1099, 1101–1103 (9th Cir.2009).

Here, the Government concedes that the Court should not impose a sentence on any two multiplicitous counts of conviction. (Opp'n to Second Mot. at 2.) However, the Government opposes Defendant's motion to dismiss the Counts before trial and argues that vacation of the multiplicitous counts before sentencing provides the appropriate remedy. (*Id.*) Defendant suggests that having more counts would prejudice him by suggesting to the jury that he has committed more crimes. (Reply to Second Mot. at 4.) In support, Defendant cites the Tenth Circuit's decision in *United States v. Johnson*, 130 F.3d 1420 (10th Cir.1997), where the court stated:

> The risk of a trial court not requiring pretrial election is that it "may falsely suggest to a jury that a defendant has committed not one but several crimes." *United States v. Duncan*, 850 F.2d 1104,

1108 n. 4 (6th Cir.1988); *see also United States v. Marquardt,* 786 F.2d 771, 778 (7th Cir.1986) (multiple indictments create the impression of more criminal activity than in fact occurred). "Once such a message is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue," and will reach a compromise verdict or assume the defendant is guilty on at least some of the charges. *United States v. Clarridge,* 811 F.Supp. 697, 702 (D.D.C.1992).

(*Id.* (citing *Johnson,* 130 F.3d at 1426.).)

As the Government contends, the Supreme Court has recognized that "[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." *United States v. Batchelder,* 442 U.S. 114, 124, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). In fact, the Supreme Court has held that so long as sufficient evidence supports the charges, "there can be no impropriety" in charging multiplicitous counts in an indictment. *Ball v. United States,* 470 U.S. 856, 860 n. 8, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). The Court notes that the evidence that the Government intends to present in this case, if taken as true, would support convictions for violations of both subsections 1591(a)(1) and (a)(2).

Additionally, in the context of greater and lesser included offenses, the Ninth Circuit has instructed that "[p]rosecutors should not be discouraged from charging defendants with greater and lesser included offenses in separate counts under the same indictment." *United States v. Jose,* 425 F.3d 1237, 1247 (9th Cir.2005). Such a presentation may allow for providing a "cleaner package" to the jury that can aid the jury in understanding the charges. *Id.*

Importantly, here, the role of Defendant's co-defendant, Sharon Nishimura, who according to the Government assisted Defendant with his prostitution enterprise, may allow the jury to find that although Defendant was not responsible for the actual recruiting, enticing, harboring, transporting, providing or obtaining of some of the victims, and therefore did not violate subsection 1591(a)(1), that he benefitted financially from Nishimura's conduct, and therefore violated subsection 1591(a)(2). *See Johnson,* 130 F.3d at 1426 (affirming district court's decision to proceed with multiplicitous charges where there was a possibility, "albeit slim," that the jury would have acquitted on some of the charges); *see also United States v. Harwell,* 426 F.Supp.2d 1189, 1192 (D.Kan. 2006) (proceeding with multiplicitous counts when there was a possibility that the jury would acquit on one of the counts); *Josephberg,* 459 F.3d at 355 (2d Cir.2006) (holding that district court's dismissal of possibly multiplicitous count before trial was premature).

Moreover, the Ninth Circuit has held that a defendant is not prejudiced where the Government would present the same evidence regardless of whether multiplicitous counts were dismissed before. *See United States v. Matthews,* 240 F.3d 806, 818 (9th Cir.2000); *United States v. Nash,* 115 F.3d 1431, 1438 (9th Cir.1997). Here, the Government would necessarily present the same evidence regardless of whether any of the multiplicitous counts were dismissed before trial. *See Matthews,* 240 F.3d at 818. In fact, the Government indicated at the hearing that if forced to elect among multiplicitous counts, it would supercede the Indictment and put the multiplicitous counts together as different ways in which Defendant may have violated the statute, which could serve to create confusion for the jury. Moreover, as described above, here it is possible that the jury could acquit on one of the multiplicitous counts, which provides further support for allowing all counts to go before the jury.

Therefore, the Court finds that dismissal of the counts would not be an appropriate remedy.

The Court agrees with the Government that appropriate jury instructions would eliminate the risk of such prejudice. (*See* Opp'n to Second Mot. at 12 (citing, *e.g., United States v. Poepoe,* 2007 WL 2122191, *5 (D.Haw.2007) (unreported) (allowing the Government to proceed on multiplicitous indictment where prejudice of multiple counts would be cured by instructions); *see also United States v. Platter,* 435 F.Supp.2d 913, 918 (N.D.Iowa 2006)).)

If Defendant is convicted of multiplicitous counts, the Court will vacate one of the multiplicitous counts for which Defendant is convicted before sentencing. *Overton,* 573 F.3d at 691; *United States v. Zalapa,* 509 F.3d 1060, 1064 (9th Cir.2007) ("it was plain error for the district court not to vacate one of the [multiplicitous] counts before entering judgment and sentencing [the defendant]"); *United States v. Wiga,* 662 F.2d 1325, 1335–1336 (9th Cir. 1981) ("agree[ing] . . . that if the prosecution fails to elect under which statute to proceed, and if convictions are rendered under both statutes, that the district court may exercise its discretion in deciding which conviction to vacate.").

Accordingly, the Court DENIES Defendant's Motion to Dismiss Counts 1, 3, 5, 7, 9, and 11 or Counts 2, 4, 6, 8, and 12, or Otherwise Redress the Multiplicity of these Counts.

III. *Third Motion: Motion to Dismiss Counts 9 and 10 or Counts 11 and 12, or Otherwise Redress the Multiplicity of these Counts*

The arguments in regards to Defendant's Third Motion are substantially similar to his Second Motion. Count 9 charges Defendant with violating section 1591(a)(1) by recruiting, enticing, harboring, transporting, providing, or obtaining, A.N.H. *knowing that force, fraud, or coercion would be used* to cause her to engage in commercial sex. (Indictment at 7.) Count 11 charges Defendant with violating section 1591(a)(1) by recruiting, enticing, harboring, transporting, providing, or obtaining, A.N.H. *knowing that A.N.H. was younger than 18* and would be caused to engage in commercial sex. (*See id.*) These Counts cover the same time period and depend upon the same evidence of conduct.

Count 10 charges Defendant with violating section 1591(a)(2) by benefitting financially from a venture that recruited, enticed, harbored, transported, provided, or obtained, A.N.H. *knowing that force, fraud, or coercion would be used* to cause her to engage in commercial sex. (*See id.* at 8.) Count 12 charges Defendant with violating section 1591(a)(2) by benefitting financially from a venture that recruited, enticed, harbored, transported, provided, or obtained, A.N.H. *knowing that A.N.H. was younger than 18* and would be caused to engage in commercial sex. (*See id.* at 9.) As above, these Counts cover the same time period and depend upon the same evidence of conduct.

With respect to these Counts, Defendant again asserts that the Counts are multiplicitous and that having more counts would prejudice him by suggesting to the jury that he has committed more crimes. (Third Mot. at 7–9.) In so arguing, Defendant concedes that a defendant may satisfy the section 1591 *mens rea* element by either "knowing that force, fraud, or coercion . . . will be used to cause the person to engage in a commercial sex act" or by knowing that "the person has not attained the age of 18 years and will be caused to engage in a commercial sex act" as these are simply alternatives ways of satisfying the single offense defined in section 1591. (*See id.* at 3–6.) In opposing Defendant's

Third Motion, the Government agrees with Defendant that Counts 9 and 11 charge the same offense of violating section 1591(a)(1) by recruiting, enticing, harboring, transporting, providing, or obtaining, A.N.H. for commercial sex, and that Counts 10 and 12 charge the same offense of violating section 1591(a)(2) by benefitting financially from such conduct. (Opp'n to Third Mot. at 2.) As above, however, the Government opposes Defendant's motion to dismiss the Counts before trial and asserts that vacation of the multiplicitous counts before sentencing provides the appropriate remedy. (*Id.*)

Again, the Fifth Amendment's Double Jeopardy Clause prohibits being punished twice for a single offense, *Davenport,* 519 F.3d at 943, but so long as there is evidence to support the charges, "there can be no impropriety" in charging multiplicitous counts in an indictment. *Ball,* 470 U.S. at 860 n. 8, 105 S.Ct. 1668. As above, the Court notes that the evidence that the Government intends to present in this case, if taken as true, would support convictions for violations of both subsections 1591(a)(1) and (a)(2) by either force, fraud, or coercion or knowledge that A.N.H. had not attained the age of 18 years.

Here, as above, the Government would present the same evidence whether or not the multiplicitous counts are dismissed before trial because the counts cover the same period of time over which Defendant allegedly victimized A.N.H. Therefore, regardless of the multiplicitous counts, Defendant's actions with regard to A.N.H.— whether involving his knowledge of force, fraud, or coercion, or her under-age status—would be "part of a 'single criminal episode'" and "inextricably intertwined" with the offense conduct. *United States v. Williams,* 989 F.2d 1061, 1071 (9th Cir. 1993). Additionally, the jury could acquit Defendant on one of the multiplicitous counts by finding either that Defendant did not know that A.N.H. was younger than 18 but that he nevertheless used force, fraud, or coercion against her, or vice-versa. Moreover, jury instructions would mitigate any risk of prejudice in the multiple count indictment. *See United States v. Bolt,* 776 F.2d 1463, 1467 (10th Cir.1985); *Platter,* 435 F.Supp.2d 913.

For all the reasons above, the Court finds, as above, that vacating the multiplicitous convictions before sentencing is an appropriate remedy. *Matthews,* 240 F.3d at 818; *Nash,* 115 F.3d at 1438. Therefore, if the jury convicts Defendant on Counts 9 through 12, the Court will vacate Defendant's conviction for either Counts 9 or 11 and 10 or 12 before sentencing. *Hector,* 577 F.3d at 1101–1103; *Wiga,* 662 F.2d at 1335–1336.

Accordingly, the Court DENIES Defendant's Motion to Dismiss Counts 9 and 10 or Counts 11 and 12, or Otherwise Redress the Multiplicity of these Counts.

## *CONCLUSION*

For the reasons stated above, the Court **DENIES** Defendant's motions to dismiss the Second Superseding Indictment. (Docs. ## 139–141.) As indicated, the Court will elect to vacate one of any two multiplicitous counts for which Defendant is convicted before sentencing.

IT IS SO ORDERED.